# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

vs.                                  No. CR 16-1090 JB

RUPESH BHAKTA,

     Defendant.

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** comes before the Court on the Defendant's Sentencing Memorandum with Objections to Presentence Investigation Report, filed July 1, 2017 (Doc. 64)("Objections"). The Court held a sentencing hearing on July 11, 2017. The primary issue is whether the Court should count two of Defendant Rupesh Bhakta's prior sentences separately under § 4A1.2(a)(2) of the United States Sentencing Guidelines ("U.S.S.G."). Because the Court concludes that Bhakta was not sentenced on the same day for the two offenses at issue, despite also finding by a preponderance of the evidence that a clerical error apparently contributed to Bhakta's sentencings on different dates for those two offenses, the Court -- in its consideration of U.S.S.G. § 4A1.2(a)(2)'s plain language -- will overrule Bhakta's objection and count Bhakta's sentences separately.

---

[1]In its Sealed Memorandum Opinion and Order, filed August 28, 2017 (Doc. 72)("Sealed MOO"), the Court inquired whether the parties had any proposed redactions to protect confidential information within the Sealed MOO before the Court publishes a public version. See Sealed MOO at 1 n.1. The Court gave the parties 14 calendar days to provide notice of any proposed redactions. See Sealed MOO at 1 n.1. The parties have not contacted the Court or made any filings within CM/ECF to indicate that they have any proposed redactions. Consequently, the Court is now re-filing the Sealed MOO in an unsealed form.

## FACTUAL BACKGROUND

In a plea agreement, filed December 8, 2016 (Doc. 33)("Plea Agreement"), Bhakta admitted the following facts:

> On or about February 16, 2016, in San Juan County, in the District of New Mexico, I, along with another person, unlawfully, knowingly and intentionally distributed a controlled substance, that is, a mixture and substance containing a detectable amount of methamphetamine, to a law enforcement Detective of the Farmington, New Mexico Police Department. Following my arrest, I was read my Miranda warning by a law enforcement officer. I waived my rights and admitted to the crime. The methamphetamine I sold to the Detective field tested positive for methamphetamine. I acknowledge that the government can prove that it was in fact methamphetamine.

Plea Agreement ¶ 8, at 3-4.

## PROCEDURAL HISTORY

On February 25, 2016, Plaintiff United States of America, through Special Agent Jeffrey S. McKinley, filed a Criminal Complaint (dated February 16, 2016), filed February 25, 2016 (Doc. 1)("Complaint"), describing probable cause that Bhakta and his co-defendant had committed drug crimes in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(b), which make unlawful the distribution of methamphetamine, and of 31 U.S.C. § 846, which makes unlawful the conspiracy to distribute methamphetamine. Complaint at 1-2. On March 23, 2016, a grand jury returned a five-count Indictment, filed March 23, 2016 (Doc. 13)("Indictment"), charging Bhakta and a co-defendant, in relevant part, for his conduct when he,

> [o]n or about February 16, 2016, in San Juan County, in the District of New Mexico . . . unlawfully, knowingly and intentionally combined, conspired, confederated, agreed, and acted interdependently with each other, and with other persons known and unknown to the Grand Jury, to commit an offense against the United States, distribution of 50 grams and more of a mixture and substance containing methamphetamine contrary to 21 U.S.C. §§ 841(a)(1) and (b)(1)(b)[, i]n violation of 21 U.S.C. § 846.

Indictment at 2-3. The Indictment also charges Bhakta, in relevant part, for his conduct when he:

> On or about February 16, 2016, in San Juan County, in the District of New
> Mexico . . . unlawfully, knowingly and intentionally distributed a controlled
> substance, 50 grams and more of a mixture and substance containing a detectable
> amount of methamphetamine[, i]n violation of 21 U.S.C. §§ 841(a)(1) and
> (b)(1)(b), and 18 U.S.C. § 2.

Indictment at 3. On December 8, 2016, the United States filed, against Bhakta alone, an

Information, filed December 8, 2016 (Doc. 30)("Information"), charging Bhakta as follows:

> On or about February 16, 2016, in San Juan County, in the District of New
> Mexico, the defendant, **RUPESH BHAKTA**, unlawfully, knowingly and
> intentionally distributed a controlled substance, a mixture and substance
> containing a detectable amount of methamphetamine. In violation of 21 U.S.C.
> §§ 841 (a)(l ) and (b)(l )(C), and 18 U.S.C. § 2.

Information at 1. In light of the Information, Bhakta waived his "right to prosecution by

indictment and consent[ed] to prosecution by information." Waiver of Indictment, filed

December 8, 2016 (Doc. 31)("Waiver"). Accordingly, on December 8, 2016, pursuant to the

Plea Agreement, Bhakta entered a guilty plea as to the Information's allegations of violations of

"21 U.S.C. §§ 841 (a)(l) and (b)(l)(C), that being Distribution of a Mixture or Substance

Containing Methamphetamine; and 18 U.S.C. § 2, that being Aiding and Abetting." Plea

Agreement ¶ 3, at 2.

On February 22, 2017, the United States Probation Office ("USPO") disclosed the

Presentence Investigation Report, filed February 22, 2017 (Doc. 42)("PSR"). The PSR first

explains that the Plea Agreement

> has already conferred a benefit on the defendant. In return, for the benefit
> conferred on the defendant by entering into the plea agreement, the defendant
> agrees not to seek a downward departure or variance from the range of twenty-
> four (24) to sixty (60) months as agreed to by the parties pursuant to Rule
> 11(c)(1)(C) of the Federal Rules of Criminal Procedure.

PSR ¶ 5, at 4.  The PSR also explains Bhakta has agreed to "waive all rights conferred by 18 U.S.C. § 3742."  PSR ¶ 6, at 4.  The PSR calculates a base offense level of 24 and then applies a "Chapter Four Enhancement," because:

> The defendant was at least 18 years old at the time of the instant offense of conviction; the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense; therefore, the defendant is a career offender.  The offense level for a career offender is 32 because the statutory maximum term of imprisonment is 20 years.  USSG §4B1.1(b).

PSR ¶ 26, at 7.  After applying a 3-level reduction for Bhakta's acceptance of responsibility, the PSR arrives at a total offense level of 29.  See PSR ¶¶ 27-29, at 7.  After reviewing Bhakta's criminal history, the PSR computes a criminal history score of 7, which, "[a]ccording to the sentencing table in USSG Chapter 5, Part A, . . . establishes a criminal history category of IV."  PSR ¶¶ 37-38, at 10.  The PSR also explains that Bhakta "is a career offender" and thus determines that the "criminal history category is VI" under "USSG § 4B1.1(b)."  PSR ¶ 39, at 10.  In relevant part, the PSR identifies Bhakta's New Mexico state Robbery and New Mexico state Drug Trafficking offenses as bases for computing Bhakta's subsequent criminal history score of seven and for applying the career offender designation.  See PSR ¶¶ 34-35, at 8-9.  The PSR states: "Based upon a total offense level of 29 and a criminal history category of VI, the guideline imprisonment range is 151 months to 188 months."  PSR ¶ 71, at 17.

Bhakta advances one legal objection to the PSR's calculation of his guideline imprisonment range.  See Objections at 7.  Bhakta states:

> A clerical error in the state system, resulting in separate sentencing dates, should not form the basis for "Career Offender" designation.  The PSR calculates the defendant as a Career Offender (PSR ¶ 26) because the current conviction is a controlled substance felony offense and the defendant had at least two prior felony convictions of either a crime of violence or a controlled substance offense. There is no disputing that the current conviction is a felony controlled substance

offense, however, the defendant should not be deemed a Career Offender because he has truly not sustained two prior felony convictions of either a crime of violence or a controlled substance offense.

Objections at 7-8. In particular, Bhakta argues that the PSR's application of Bhakta's New Mexico state Robbery and New Mexico state Drug Trafficking offenses, see PSR ¶¶ 34-35, at 8-9, as two separate "prior felony convictions" was in error, because the PSR should not have counted the sentences Bhakta received for those offenses separately pursuant to U.S.S.G. § 4A1.2(a)(2). Objections at 7-8. Bhakta makes this argument, because, in reality, Bhakta was going to be sentenced for both offenses on the same day in state court, but when the trial court judge arrived in court, "the case folder for the robbery charge was not available," leading the judge to continue sentencing for that conduct until a later date. Objections at 9. Bhakta thus argues that he is not a career offender, because those two felony convictions should be counted as a single conviction. See Objections at 9-10.

The United States responded to Bhakta's Objections with the United States' Sealed Response to Rupesh Bhakta's Sentencing Memorandum with Objections (Doc. 64), filed July 10, 2017 (Doc. 66)("Response"). The United States did not, however, address Bhakta's career offender arguments. See Response, passim. The USPO disclosed two Addenda to the PSR. See Addendum to the Presentence Investigation Report, filed July 7, 2017 (Doc. 65)("Addendum"); Second Addendum to the Presentence Investigation Report, filed July 10, 2017 (Doc. 67)("Second Addendum"). In the Addendum, the USPO first recognizes:

> Defense counsel objects to paragraph 26 of the PSR which designates the defendant as a Career Offender pursuant to USSG § 4B1.1. Defense counsel states that a clerical error in the state system, resulting in separate sentencing dates should not form the basis for Career offender designation and therefore should be treated as a single sentence pursuant to USSG § 4B1.2 (a)(2). The convictions referenced in paragraphs 34 and 35 were utilized to form this assessment.

Addendum at 1.  The USPO does not change its position, however, explaining:

> Pursuant to USSG § 4B1.2 (a)(2), prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest.  If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day.  Treat any prior sentence covered by (A) or (B) as a single sentence.  As reflected in paragraphs 34 and 35 of the PSR, the defendant was charged by way of Indictment on May 21, 2008, in case no. D-307-CR-200800685, and subsequently sentenced on October 21, 2009; and by way of Indictment on March 13, 2008, in case no D-307-CR-200800317, and subsequently sentenced on November 23, 2009.  Therefore, these prior sentences shall be counted separately.  Based on this information, the presentence report will remain unchanged at this time.

Addendum at 1.  The Second Addendum does not address Bhakta's Objections.  <u>See</u> Second Addendum, <u>passim</u>.  The Court held a sentencing hearing on July 11, 2017, and overruled Bhakta's Objections for the reasons stated herein.

## **<u>RELEVANT LAW REGARDING THE GUIDELINES</u>**

In <u>United States v. Booker</u>, 543 U.S. 220 (2005), the Supreme Court of the United States of America severed the mandatory provisions from the Sentencing Reform Act, Pub. L. No. 98-473, 98 Stat. 1976, thus making Guidelines sentencing ranges effectively advisory.  In excising the two sections, the Supreme Court left the remainder of the Sentencing Reform Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing.  Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable."  <u>United States v. Booker</u>, 543 U.S. at 261.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

(A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

       (B)      to afford adequate deterrence to criminal conduct;

       (C)      to protect the public from further crimes of the defendant; and

       (D)      to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2)(A)-(D).

       [A] defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.

18 U.S.C. § 3551. To achieve these purposes, § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the nature of the offense and the defendant's character; (iii) the available sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims. See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the Tenth Circuit have clarified that, while the Guidelines are one of several factors which § 3553(a) enumerates, they are entitled to considerable deference. See Rita v. United States, 551 U.S. 338, 349 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many"). They are significant, because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses." United States v. Cage, 451 F.3d at 593 (internal quotation marks omitted). A

reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). See United States v. Booker, 543 U.S. at 261-62.

The United States Court of Appeals for the Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable." United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006), overruled on other grounds by Rita v. United States, 551 U.S. 338, 349 (2007), as recognized in United States v. Zamora-Solorzano, 528 F.3d 1247, 1251 n.3 (10th Cir. 2008). This presumption, however, is an appellate presumption, and not one that the trial court can or should apply. See Rita v. United States, 551 U.S. at 351; Gall v. United States, 552 U.S. 38, 46-47 (2007); Kimbrough v. United States, 552 U.S. 85, 90-91 (2007). Instead, the trial court must undertake the § 3553(a) balancing of factors without any presumption in favor of the advisory[2] Guidelines sentence. See

---

[2]Attorneys and courts often say that the "Guidelines" are advisory, but it appears more appropriate to say that the Guideline ranges are advisory. Gall v. United States, 522 U.S. at 46 ("As a result of our decision [in United States v. Booker], the Guidelines are now advisory [.]"); United States v. Leroy, 298 F. App'x 711, 712 (10th Cir. 2008)(unpublished)("[T]he Guidelines are advisory, not mandatory."); United States v. Sells, 541 F.3d 1227, 1237 (10th Cir. 2008)("[T]he sentence ultimately imposed by the district court was based on a correctly calculated Guidelines range, a stated consideration of the § 3553(a) factors, and an understanding that the Guidelines are advisory."). The Court must consider the Guidelines, see Gall v. United States, 522 U.S. at 46 ("It is . . . clear that a district judge must give serious consideration to the extent of any departure from the Guidelines . . . ."), and must accurately calculate the Guidelines range, see Gall v. United States, 522 U.S. at 49 ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."). The Court is not mandated, however, to apply a sentence within the calculated Guidelines range. See United States v. Sierra-Castillo, 405 F.3d 932, 936 n.2 (10th Cir. 2005)("[D]istrict courts post-Booker have discretion to assign sentences outside of the Guidelines-authorized range . . . ."). Accord United States v. Chavez-Rodarte, No. CR 08-2499 JB, 2010 WL 3075285, at *2-3 (D.N.M. July 16, 2010)(Browning, J.).

The Court must adhere to the following three-step sequence when sentencing a criminal defendant: first, determining the appropriate sentencing range on the basis of Guidelines' chapters 2 through 4; next, applying Guidelines-

Rita v. United States, 551 U.S. at 351; Gall v. United States, 552 U.S. at 46-47; Kimbrough v.

United States, 552 U.S. at 90-91.

      While the Supreme Court's decision in United States v. Booker has given the sentencing court discretion that it did not have earlier, the sentencing court's first task remains to accurately and correctly determine the advisory-guideline sentence. Thus, before the sentencing court takes up a defendant's Booker arguments, the sentencing court must first determine whether the defendant is entitled to downward departures. The sentencing court may, however, also use these same departure factors in the Booker calculus, even if the court does not grant a downward departure.

---

      contemplated departures based on parts 5H and 5K; and, only then, varying from the Guidelines framework on the basis of the § 3553(a) factors taken as a whole. The Court must follow this sequence, because: (i) the Guidelines expressly provide for it, and courts must still consult the Guidelines, even if they will subsequently vary from them in the third step of the sequence; and (ii) adherence to this sequence is the only way to give effect to 18 U.S.C. § 3553(e).

. . . .

      The Supreme Court held in United States v. Booker that "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing," 543 U.S. at 264, but further expounded in Kimbrough v. United States that "courts may vary [from the Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines," 552 U.S. 85, 101 (2007)(alteration in original)(internal quotation marks omitted). In theory, this freedom could mean that a district court may excise individual portions of the Guidelines along the way as it performs an otherwise by-the-book Guidelines analysis, end up with a sentence with built-in variances, and never even know what sentence a true, rigid Guidelines application would yield. In practice, however, appellate courts expect district courts to first obtain the true Guidelines' sentence range and circumscribe their United States v. Booker-granted authority to post-Guidelines analysis "variances." Irizarry v. United States, 553 U.S. 708, 710-16 (2008). A district court that attempts to vary from U.S.S.G. § 1B1.1's basic sequence most likely acts procedurally unreasonably. See Gall v. United States, 552 U.S. 38, 51 (2007)(holding that a sentence is procedurally reasonable if "the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence" (emphasis added)).

United States v. Nolf, No. CR 10-1919-002 JB, 2014 WL 3377695, at *20-21 (D.N.M. June 20, 2014)(Browning, J.)(emphasis in original).

United States v. Apodaca-Leyva, No. CR 07-1479 JB, 2008 WL 2229550, at *6 (D.N.M. Feb. 13, 2008)(Browning, J.). The Supreme Court recognized, however, that the sentencing judge is "in a superior position to find facts and judge their import under § 3553(a) in each particular case." Kimbrough v. United States, 552 U.S. at 89. Applying § 3553(a)'s factors, the Court has concluded that the case of an illegal immigrant who re-entered the United States to provide for his two children and two siblings was not materially differentiated from other re-entry cases, and, thus, no variance from the Guidelines sentence was warranted. See United States v. Alemendares-Soto, No. CR 10-1922 JB, 2010 WL 5476767, at *12 (D.N.M. Dec. 14, 2010)(Browning, J.). On the other hand, in United States v. Jager, No. CR 10-1531 JB, 2011 WL 831279 (D.N.M. Feb. 17, 2011)(Browning, J.), although the defendant's military service was not present to an unusual degree and, thus, did not warrant a departure, the Court found that a variance was appropriate, because the defendant's military service was "superior and uniformly outstanding," as the defendant appeared to have been "trustworthy[] and dedicated, and he served with distinction." 2011 WL 831279, at *14.

## LAW REGARDING THE BURDEN OF PROOF REQUIRED FOR ENHANCEMENTS UNDER THE GUIDELINES

In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court reaffirmed the principle that it is permissible for sentencing judges "to exercise discretion -- taking into consideration various factors relating both to offense and offender -- in imposing judgment within the range prescribed by statute." 530 U.S. at 481. The Supreme Court cautioned, however, that the Constitution of the United States of America limits this discretion and that the Constitution's Sixth Amendment requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be

submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. at 490. In Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court elaborated on its holding in Apprendi v. New Jersey, stating that the "statutory maximum for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." 542 U.S. at 303 (emphasis omitted)(citations omitted)(internal quotation marks omitted). In United States v. Booker, the Supreme Court held that, because the sentencing guidelines are no longer mandatory, "Apprendi does not apply to the present advisory-Guidelines regime." United States v. Ray, 704 F.3d 1307, 1314 (10th Cir. 2013). See United States v. Booker, 543 U.S. at 259 ("[W]ithout this provision [of the Guidelines statute] -- namely, the provision that makes the relevant sentencing rules mandatory and imposes binding requirements on all sentencing judges -- the statute falls outside the scope of Apprendi's requirement." (alterations omitted)(internal quotations marks omitted)). The Supreme Court has recently held that Apprendi v. New Jersey's requirements apply to facts that increase a defendant's mandatory minimum sentence. See Alleyne v. United States, 133 S. Ct. 2151, 2155 (2013).

In United States v. Magallanez, 408 F.3d 672 (10th Cir. 2005), the Tenth Circuit held that Blakely v. Washington and United States v. Booker has not changed the district court's enhancement findings analysis. See 408 F.3d at 684-85. United States v. Magallanez involved plain-error review of a drug sentence in which a jury found the defendant, Magallanez, guilty of conspiracy to possess with intent to distribute and to distribute methamphetamine. See 408 F.3d at 676. As part of its verdict, the jury, through a special interrogatory, attributed to the defendant 50-500 grams of methamphetamine; at sentencing, however, the judge -- based on testimony of the various amounts that government witnesses indicated they had sold to the defendant --

attributed 1200 grams of methamphetamine to the defendant and used that amount to increase his sentence under the Guidelines.  See United States v. Magallanez, 408 F.3d at 682.  The district court's findings increased the defendant's Guidelines sentencing range from 63 to 78 months to 121 to 151 months.  See United States v. Magallanez, 408 F.3d at 682-83.  The Tenth Circuit stated that, both before and after Congress' passage of the Sentencing Reform Act, "sentencing courts maintained the power to consider the broad context of a defendant's conduct, even when a court's view of the conduct conflicted with the jury's verdict."  United States v. Magallanez, 408 F.3d at 684.   Although United States v. Booker made the Guidelines ranges "effectively advisory," the Tenth Circuit in United States v. Magallanez reaffirmed that "district courts are still required to consider Guideline ranges, which are determined through application of the preponderance standard, just as they were before."  408 F.3d at 685 (citation omitted).

The Tenth Circuit, while "recognizing 'strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof,'" has "long held that sentencing facts in the 'ordinary case' need only be proven by a preponderance."  United States v. Olsen, 519 F.3d 1096, 1105 (10th Cir. 2008)(quoting United States v. Washington, 11 F.3d 1510, 1516 (10th Cir. 1993)).[3]  "[T]he application of an enhancement . . . does not implicate

---

[3]Although the Tenth Circuit stated in *United States v. Washington* that "the issue of a higher than a preponderance standard is foreclosed in this circuit," 11 F.3d at 1516, the Tenth Circuit has since classified its holding as leaving "open the possibility that due process may require proof by clear and convincing evidence before imposition of a Guidelines enhancement that increases a sentence by an 'extraordinary or dramatic' amount," *United States v. Ray*, 704 F.3d at 1314 (quoting *United States v. Olsen,* 519 F.3d at 1105).  *See United States v. Olsen,* 519 F.3d at 1105 (affirming the use of the preponderance-of-the-evidence standard for sentencing facts that increase a sentence in the "'ordinary case'" (quoting *United States v. Washington,* 11 F.3d at 1516)).  The Tenth Circuit has not yet found that an "extraordinary or dramatic" instance warrants a higher standard of proof for certain facts that enhance a defendant's sentence.  *United States v. Olsen,* 519 F.3d at 1105 (explaining that it need not determine whether a higher standard of proof is required to sentence a defendant for committing perjury in relation to a grand

the Supreme Court's holding in Apprendi v. New Jersey." United States v. Reyes-Vencomo, No. CR 11-2563 JB, 2012 WL 2574810, at *3 (D.N.M. June 26, 2012)(Browning, J.). The Tenth Circuit applies Apprendi v. New Jersey's requirement that a fact be submitted to a jury only where the fact would increase a defendant's sentence "above the statutory maximum permitted by the statute of conviction." United States v. Price, 400 F.3d 844, 847 (10th Cir. 2005). Accord United States v. Ray, 704 F.3d at 1314. A defendant may assert an error under Apprendi v. New Jersey only where the fact at issue increased his sentence beyond the statutory maximum. See United States v. O'Flanagan, 339 F.3d 1229, 1232 (10th Cir. 2003)(holding that a defendant could not assert an error under Apprendi v. New Jersey, because "his sentence does not exceed the statutory maximum"); United States v. Hendrickson, No. 12-5016, 2014 WL 6679446, at *6 (10th Cir. Nov. 25, 2014)(unpublished)[4](holding that, after Alleyne v. United States, "[i]t is well-

---

jury investigation, because the enhancement did not require the district court to determine that the defendant committed murder, but only that he obstructed a homicide investigation). See United States v. Constantine, 263 F.3d 1122, 1125 n.2 (10th Cir. 2001)(affirming a preponderance-of-the-evidence standard for facts that enhance a defendant's offense level 4 levels); United States v. Valdez, 225 F.3d 1137, 1143 n.2 (10th Cir. 2000)(rejecting the defendant's argument that a dramatic increase in a sentence because of a sentencing judge's finding of additional amounts of methamphetamine associated with acquitted charges entitled the defendant to a clear-and-convincing evidence standard at sentencing, and noting that the Tenth Circuit "foreclosed by binding precedent" this argument); United States v. Washington, 11 F.3d at 1516 (finding that a district court need not find by any more than a preponderance of the evidence the amount of cocaine a defendant distributed, even though its findings increased the defendant's sentence from twenty years to consecutive forty-year terms).

[4]United States v. Hendrickson is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value

established that sentencing factors need not be charged in an indictment and need only be proved to the sentencing judge by a preponderance of the evidence").  The Court has noted:

> The Court explained that, although the decision of the Supreme Court of the United States in <u>Alleyne v. United States</u>, . . . 133 S. Ct. 2151 . . . (2013), expands the rule from <u>Apprendi v. New Jersey</u>, 530 U.S. 466 . . . (2000)(holding that facts that increase the maximum sentence a defendant faces must be proven to a jury beyond a reasonable doubt), to cover facts that increase the mandatory minimum sentence, as well as the maximum sentence, it does not prohibit district judges from continuing to find advisory sentencing factors by a preponderance of the evidence.  <u>See</u> [<u>United States v. Sangiovanni</u>, No. CR 10-3239 JB,] 2014 WL 4347131, at *22-26 [(D.N.M. Aug. 29, 2014)(Browning, J.)].

<u>United States v. Cervantes-Chavez</u>, 2014 WL 6065657, at *14 (D.N.M. 2014)(Browning, J.).

## <u>ANALYSIS</u>

The Court will overrule Bhakta's Objections.  Although the Court concludes that, by a preponderance of the evidence, Bhakta was the unfortunate victim of a clerical error at the time of his sentencing for his New Mexico state Robbery and New Mexico state Drug Trafficking offenses in state court, and that, but for that error, he would have been sentenced on the same day for those two offenses -- and thus would not be a Career Offender under U.S.S.G. § 4B1.1(b) -- the Court is confined to the application of U.S.S.G. § 4A1.2(a)(2)'s plain language.  Because U.S.S.G. § 4A1.2(a)(2)'s plain language requires the Court count separately the offenses for

---

with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

<u>United States v. Austin</u>, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that *United States v. Hendrickson,* <u>United States v. Schmidt</u>, 353 F. App'x 132 (10th Cir. 2009), <u>United States v. Banda</u>, 168 F. App'x 284 (10th Cir. 2006), <u>United States v. Schwartz</u>, 408 F. App'x 868 (6th Cir. 2010), <u>United States v. Quinn</u>, 566 F. App'x 659 (10th Cir. 2014), and <u>United States v. Leroy</u>, 298 F. App'x 711 (10th Cir. 2008), all have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

which he was sentenced on different days, the Court will overrule Bhakta's Objections regarding

his Career Offender status under U.S.S.G. § 4B1.1(b).

1.    **THE COURT OVERRULES BHAKTA'S OBJECTIONS REGARDING CAREER OFFENDER STATUS UNDER U.S.S.G. § 4B1.1(b), BECAUSE BHAKTA HAS TWO QUALIFYING PRIOR CONVICTIONS FOR EITHER A CRIME OF VIOLENCE OR A CONTROLLED SUBSTANCE OFFENSE.**

In calculating Bhakta's criminal history, the PSR considers Bhakta as a Career Offender

pursuant to U.S.S.G. § 4B1.1(b), see PSR ¶ 26, because the current conviction is a controlled

substance felony offense, and because Bhakta has at least two prior felony convictions of either a

crime of violence or a controlled substance offense.  Section 4B1.1 of the U.S.S.G. provides:

> (a)    A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

> (b)    Except as provided in subsection (c), if the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply.  A career offender's criminal history category in every case under this subsection shall be Category VI.

U.S.S.G. § 4B1.1(a)-(c).  Specifically, the PSR identifies Bhakta's New Mexico state Robbery

and New Mexico state Drug Trafficking offenses, see PSR ¶¶ 34-35, at 8-9, as the bases for

computing Bhakta's subsequent criminal history score of 7 under U.S.S.G. § 4B1.1(b), because

the USPO added criminal history points for both offenses, counting the sentences -- pursuant to

U.S.S.G. § 4A1.2(a)(2) -- separately, see PSR ¶¶ 34-35, at 8-9; Addendum at 1.  Section

4A1.2(a)(2) of the U.S.S.G., which announces definitions and instructions for computing

criminal history, provides:

> If the defendant has multiple prior sentences, determine whether those sentences are counted separately or as a single sentence. Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an

intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day. Count any prior sentence covered by (A) or (B) as a single sentence.

U.S.S.G. § 4A1.2(a)(2).

Accordingly, Bhakta's prior sentences should be counted separately, unless: (i) either of the sentences resulted from offenses contained in the same charging instrument; or (ii) the sentences were imposed on the same day. Here, there was no intervening arrest between Bhakta's commission of the two offenses at issue. See PSR ¶¶ 34-35, at 8-9. Bhakta was charged by way of New Mexico Indictment on May 21, 2008, in case no. D-307-CR-200800685, and subsequently sentenced on October 21, 2009; and by way of Indictment on March 13, 2008, in case no D-307-CR-200800317, and subsequently sentenced on November 23, 2009. See PSR ¶¶ 34-35, at 8-9. Bhakta was thus not sentenced on the same day. See PSR ¶¶ 34-35, at 8-9. Bhakta then contends, instead, that, if only he was sentenced for both of the offenses on the same day in October, 2009 -- as was the original plan -- this circumstance would constitute a single sentence, and the robbery and trafficking convictions could not both be used as predicate offenses for career offender purposes. See Objections at 7-10. The argument is that "[t]he vagaries of a clerical mistake in state court resulting in two sentencing dates should not serve as the basis to elevate a defendant to career offender status." Objections at 10. Bhakta, however, cites no authority which overcomes the plain language of U.S.S.G. § 4A1.2(a)(2).

The Court has reviewed the relevant case law and facts, and concludes that neither of § 4A1.2(a)(2)'s preconditions for counting the two offenses separately exists. The sentences did not emanate from the same charging instrument, nor were they imposed on the same day. That observation is, accordingly, the end of the debate for purposes of applying § 4A1.2(a)(2). As to

Bhakta's argument that the Court should consider Bhakta's sentences as occurring the same day, because, but for a clerical error -- which the Court notes as being undisputed by the United States -- where "the case folder for the robbery charge was not available," meaning that he was almost sentenced on the same day for both offenses, the Court can find no authority in support of such a proposition. Objections at 9. Indeed, the only relevant authority the Court found actually undercuts Bhakta's argument:

> As to Defendant's argument that sentences on the two offenses should have been imposed on the same day, she cites no authority for this proposition and no authority to suggest that, even if true, this fact would warrant ignoring the plain language of § 4A1.2, which requires that the two sentences at issue be counted separately.

United States v. Harris, 605 F. App'x 882, 888 (11th Cir. 2015)(unpublished). The Court, accordingly, overrules Bhakta's objection, because he was not sentenced on the same day for the two offenses at issue, despite also finding by a preponderance of the evidence that a clerical error was the operative reason for Bhakta's sentencings on different dates.

**IT IS ORDERED** that the objections in the Defendant's Sentencing Memorandum with Objections to Presentence Investigation Report, filed July 1, 2017 (Doc. 64), are overruled.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

James D. Tierney
  Acting United States Attorney
Rumaldo R. Armijo
  Assistant United States Attorney
Albuquerque, New Mexico

  *Attorneys for the Plaintiff*

Wayne Baker
Law Office of Wayne Baker
Albuquerque, New Mexico

*Attorneys for the Defendant*